# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DANIEL E. BEARD,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:16-cv-1091
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Daniel E. Beard, brings this action pursuant to 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's application for disability insurance benefits ("DIB"). This matter is before the Court

on plaintiff's Statement of Errors (Doc. 10) and the Commissioner's response in opposition

(Doc. 13).

## I. Procedural Background

Plaintiff protectively filed his application for DIB in November 2013, alleging disability

since October 23, 2008, due to "migraines; three back injuries; degenerative disk disease;

nerve damage in both hands/three surgeries; arthritis throughout neck, back, hands, knees,

shoulders; bulge disk low back; spinal cord compression in neck; right knee pinned together;

pain medication dependency; bone spurs; and rotator cuff tears." (Tr. 217). The application was

denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a

*de novo* hearing before administrative law judge ("ALJ") Andrew Gollin. Plaintiff and a

vocational expert ("VE") appeared and testified at the ALJ hearing on January 27, 2016. On

February 5, 2016, the ALJ issued a decision denying plaintiff's DIB application. Plaintiff's

request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] last met the insured status requirements of the Social Security
> Act on December 31, 2013.
>
> 2. The [plaintiff] did not engage in substantial gainful activity during the period
> from his alleged onset date of October 23, 2008, through his date last insured of
> December 31, 2013 (20 CFR 404.1571, *et seq.*).
>
> 3. Through the date last insured of December 31, 2013, the [plaintiff] had the
> following severe impairments: cervical, thoracic, and lumbar degenerative disc
> disease, lumbar radiculopathy, arthritis, status-post right knee reconstruction
> surgery (1993), status post shoulder surgery (2001), mild osteoarthritis of the right
> AC joint; bilateral carpal tunnel syndrome, headaches, depression, and anxiety (20
> CFR 404.1520(c)).
>
> 4. Through the date last insured, the [plaintiff] did not have an impairment or
> combination of impairments that met or medically equaled the severity of one of
> the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
> 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that, through
> the date last insured, the [plaintiff] had the residual functional capacity [("RFC")]
> to perform sedentary work as defined in 20 CFR 404.1567(a) except: the
> [plaintiff] is limited to no more than occasional pushing/pulling using foot

controls with the right lower extremity. The [plaintiff] is limited to no more than occasional pushing/pulling using hand controls with either upper extremity, and the [plaintiff] must be able to make position changes between sitting, standing, and walking while at the workstation for up to five minutes per hour. The [plaintiff] is limited to no more than occasional climbing of ramps and stairs, and no climbing of ladders, ropes, or scaffolds. The [plaintiff] is limited to no more than occasional stooping, crouching, kneeling, and crawling. The [plaintiff] is limited to no more than occasional overhead reaching with the right upper extremity. The [plaintiff] is limited to no more than occasional handling, fingering, and feeling with the right dominant hand. The [plaintiff] is limited to no more than frequent handling, fingering, and feeling with the left non-dominant hand. The [plaintiff] is limited to no work involving concentrated exposure to fumes, odors, dust, gases, pulmonary irritants, and/or poor ventilation. The [plaintiff] is limited to no concentrated exposure to vibration. The [plaintiff] is limited to no work involving hazardous machinery or equipment and no work involving unprotected heights. The [plaintiff] is limited to no work involving the operation of motorized vehicles. The [plaintiff] is limited to being able to understand, remember, and carry out detailed, but not complex, instructions. The [plaintiff] is limited to jobs that do not require a fast-paced production rate. The [plaintiff] is limited to no more than occasional changes in workplace settings and workplace duties with advance notice and demonstrated explanation given of such changes. The [plaintiff] is limited to no more than infrequent and brief interaction with the general public, which is defined as no more than 10% of the workday with each interaction lasting no more than five minutes. The [plaintiff] is limited to no more than occasional interaction with coworkers and supervisors. The [plaintiff] is limited to jobs that do not entail close, over the shoulder type supervision. The [plaintiff] is limited to jobs that allow employees to be off task up to 10% of the workday.

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[2]

7. The [plaintiff] was born [in] . . . 1971 and was 42 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding

---

[2]Plaintiff's past relevant work was as a machinist and an assembler, semi-skilled to skilled, and performed at medium to heavy exertion. (Tr. 26, 74-75).

that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the dated last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a)).[3]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from October 23, 2008, the alleged onset date, through December 31, 2013, the date last insured (20 CFR 404.1520(g)).

(Tr. 18-28).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[3]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary unskilled jobs such as surveillance system monitor, with 175 jobs regionally and 25,000 jobs nationally; call out operator, with 235 jobs regionally and 31,000 nationally; and order clerk, with 300 jobs regionally and 41,000 jobs nationally. (Tr. 27, 81).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D.    Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ erred in finding plaintiff's spine impairments do not meet the requirements of Listing 1.04A; (2) the ALJ failed to properly analyze plaintiff's credibility and allegations of pain pursuant to Social Security Ruling (SSR) 96-7p; (3) the ALJ failed to comply with SSR 02-01p in not considering the impact of plaintiff's obesity on his ability to work; and (4) the ALJ failed to incorporate all of the state agency psychologists' opinions that he expressly accepted. (Doc. 10).

1.    <u>Listing 1.04A</u>

The ALJ determined that plaintiff did not meet Listing 1.04A because his back impairments do not produce the positive straight leg raises or atrophy required by the listing. (Tr. 19). Plaintiff contends the ALJ's analysis was "deficient" in that the evidence of record combined with the ALJ's failure to "evaluate the evidence, compare it to the Listing, and give an explained conclusion" precludes meaningful judicial review. (Doc. 10 at 7). In addition, plaintiff argues that the ALJ did not rely on any physician's opinion to make his determination

regarding Listing 1.04A. (Doc. 10 at 7). Plaintiff argues the ALJ should have had a medical

expert at the hearing to review the evidence and scientific test results to determine if plaintiff's

impairments met or equaled Listing 1.04A; instead, the ALJ improperly used his lay opinion to

interpret the medical evidence of the record. (*Id.* at 8).

Listing 1.04 governs disorders of the spine, including degenerative disc disease, and

requires that the spinal condition result "in compromise of a nerve root . . . or the spinal cord."

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Additionally, there must be:

> A. Evidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy with
> associated muscle weakness or muscle weakness) accompanied by sensory or
> reflex loss and, if there is involvement of the lower back, positive straight-leg
> raising test (sitting and supine);

*Id.* Thus, to satisfy Listing 1.04A, plaintiff must demonstrate compromise of a nerve root or

spinal cord and: (1) neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3)

motor loss (atrophy with associated muscle weakness or muscle weakness); (4) sensory or reflex

loss; and (5) positive straight leg raise test, in both the sitting and supine positions. In addition,

the regulations require that the abnormal findings must be established over a period of time:

"Because abnormal physical findings may be intermittent, their presence over a period of time

must be established by a record of ongoing management and evaluation." 20 C.F.R. Part 404,

Subpart P, Appendix 1, § 1.00D.

The ALJ considered Listing 1.04A but found that it was not met because the record did

not demonstrate "the positive straight leg raises or atrophy required by Listing 1.04A." (Tr. 19).

Plaintiff alleges that the ALJ's conclusory "analysis" is insufficient and warrants a remand, citing

*Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011). In *Reynolds*, the ALJ

determined that the claimant did not have an impairment that met or equaled any of the impairments listed in Section 1.00 of the Listings without actually evaluating the evidence and giving an explanation for his conclusion. The Sixth Circuit determined that without a reasoned explanation, the ALJ's decision precluded meaningful judicial review and was not supported by substantial evidence. *Id.* at 416.

Since *Reynolds*, the Sixth Circuit has expressly declined to adopt a blanket rule that remand is required whenever an ALJ provides minimal reasoning at step three of the sequential evaluation process. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359 (6th Cir. 2014). In *Forrest*, the ALJ found at step three only that the plaintiff's impairments did not meet or medically equal the severity of a listed impairment. *Id.* The Court of Appeals nonetheless affirmed the ALJ's Listings finding despite his "sparse analysis" because "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Id.* at 366 (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step-three medical equivalency determination, and finding no need to require the ALJ to "spell out every fact a second time"); *Burbridge v. Comm'r of Soc. Sec.*, 572 F. App'x 412, 417 (6th Cir. 2014) (Moore, J., dissenting) (acknowledging that an ALJ's step-three analysis was "cursory" but suggesting that, under Sixth Circuit precedent, it is enough for the ALJ to support his findings by citing an exhibit where the *exhibit* contained substantial evidence to support his conclusion) (emphasis in original)). The Sixth Circuit in *Forrest* also found that even if the ALJ's step-three finding lacked adequate support the error was harmless because the plaintiff had not shown that his impairments met or medically equaled in severity any listed impairment. *Id.* (citing *Reynolds*, 424 F. App'x at 416 (ALJ erred by

8

providing no reasons to support his finding that a specific listing was not met, and error was not harmless because claimant had possibly put forward sufficient evidence to meet the Listing); *Audler v. Astrue*, 501 F.3d 446, 448-49 (5th Cir. 2007) (lack of step-three explanation was not harmless where claimant carried her burden of showing she met a listing)). *See also Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 435 (6th Cir. 2016) (harmless error found where ALJ's rejection of listing-level IQ score as inconsistent with record evidence was supported, which necessarily precluded finding that plaintiff met requirements of Listing 12.05C); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 455 (6th Cir. 2016) (record evidence sufficient to support ALJ's conclusion that the plaintiff did not meet requirements of Listing 12.05C).

Here, the ALJ did not err by failing to sufficiently articulate the basis for his Listings finding. The ALJ stated that he considered Listing 1.04; he identified the evidence on which he relied in determining plaintiff's impairments do not meet or equal this specific listing (i.e., the lack of evidence showing positive straight leg raises or atrophy); and his analysis of the other evidence in connection with his RFC determination is sufficient to enable the Court to engage in a meaningful review of his decision on the other elements of Listing 1.04. (Tr. 23-24). That evidence substantially supports the ALJ's finding that plaintiff's impairments do not meet Listing 1.04.

Plaintiff has not shown that his impairments meet or medically equal Listing 1.04A prior to his date last insured of December 31, 2013. Plaintiff generally alleges that the objective evidence and clinical examination findings of record "satisfy the requirements of Listing 1.04A." (Doc. 10 at 6, citing Tr. 235, 267, 269, 275, 277-278, 281, 294, 307-308, 311, 353, 330, 336, 342, 346, 355, 368, 371, 384, 387, 391, 394, 416, 420-421, 423, 445). However, plaintiff has

made no attempt to show how the evidence in these transcript citations satisfies the Listing 1.04A requirements. None of the transcript pages referenced by plaintiff show evidence of positive straight leg raising or atrophy to meet Listing 1.04, as the ALJ found. Instead, the record shows evidence of negative straight leg raising, signifying the lack of neural tissue involvement. (Tr. 304, 314, 346, 351). In addition, many of the transcript pages cited by plaintiff do not contain clinical examination findings as alleged by plaintiff (e.g., Tr. 235, 267, 269, 275, 277, 330, 391) or contain medical records dated after plaintiff's insured status had already lapsed (e.g., Tr. 387, 445). In addition, and contrary to plaintiff's allegation in his brief, the March 2011 lumbar MRI did not show nerve root compromise as required by Listing 1.04. (*See* Tr. 304: "the MRI does not correlate with the clinical picture for this patient" and shows a "lack of neurologic compromise or impairment"). The EMG evidence cited by plaintiff (Doc. 10, Tr. 460) is dated August 2015, nearly two years after his insured status expired and is not relevant to whether he met Listing 1.04A prior to his date last insured of December 31, 2013. As the ALJ noted in his decision, an EMG from June 2011, which was within the relevant time frame, was normal. (Tr. 23, citing Tr. 305: "The EMG reviewed showed no signs of radicular process or nerve compromise, basically a normal EMG."). Plaintiff has failed to cite to evidence establishing the abnormal physical findings required under Listing 1.04A, and even if the ALJ's articulation of his step-three decision was lacking it was no more than harmless error.

Finally, plaintiff contends the ALJ erred by not relying on a physician's opinion to make his Listing 1.04A finding. Plaintiff's argument is not well-taken as it is the function of the Commissioner to determine whether an individual's impairments meet or equal a listed impairment. *See* 20 C.F.R. § 404.1527(d)(2) ("We use medical sources, including your treating

source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity (see §§ 404.1545 and 404.1546), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner."). Thus, the ALJ was not required to have a medical expert at the hearing to assess whether plaintiff met Listing 1.04A.

For these reasons, plaintiff has not shown the ALJ's finding that his severe spinal impairments do not meet or equal the requirements of Listing 1.04A lacks substantial support in the record. The ALJ properly considered plaintiff's severe impairments under the criteria applicable to a spinal disorder and reasonably determined that plaintiff does not meet or equal Listing 1.04A. The ALJ's finding that plaintiff does not satisfy the Listing 1.04A criteria for disorders of the spine is supported by substantial evidence. Plaintiff's first assignment of error should be overruled.

2.    ALJ's evaluation of plaintiff's credibility

Title 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p[1] describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by

---

[1] Effective March 2016, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms." There is no indication in the text of SSR 16-3p that the SSA intended to apply SSR 16-3p retroactively, and the Ruling therefore does not apply here. *Accord Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at

considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

Plaintiff argues the ALJ erred in evaluating his credibility regarding his allegations of chronic pain. (Doc. 10 at 9-12). Plaintiff alleges the ALJ found him only "partially credible" because his "activities and medical history are inconsistent with allegations of disabling impairments." (Doc. 10 at 10, citing Tr. 23). Plaintiff alleges this statement is conclusory and supported only by evidence the ALJ cherry-picked from the record. (*Id.* at 10). He also contends these were the only two factors the ALJ relied on in discrediting his subjective complaints. Plaintiff contends the ALJ failed to note that while plaintiff stated he was able to wash, dress, and attend to his hygiene needs, he did so "slowly and with pain." (Doc. 10 at 11, citing Tr. 394). Plaintiff also argues the ALJ improperly discounted his credibility based on the ALJ's conclusion that plaintiff carried groceries up the stairs. (Doc. 10 at 11). Plaintiff contends the

"ALJ failed to include all of the information, forcing subsequent reviewers to make assumptions that are inaccurate and untrue. Here, [plaintiff] had advised his physician that he had been carrying groceries up the stairs (how many or how heavy is not indicated), when he fell, possibly due to the increased numbness, tingling, and burning that he was experiencing in his legs and arms." (Doc. 10 at 11, citing Tr. 457).

Contrary to plaintiff's argument, the ALJ relied on numerous factors in determining that plaintiff's allegations about his pain and limitations were only partially credible. The ALJ cited six primary reasons for finding that plaintiff's subjective allegations and complaints were not fully credible to the extent they would preclude a range of sedentary work: (1) the medical evidence for the relevant time period was limited and did not support a more restrictive RFC; (2) plaintiff reported to his physicians that the various treatment modalities he received decreased his pain and improved his functionality; (3) with respect to his mental impairments, there was no real effort by plaintiff to seek or obtain ongoing psychological counseling or treatment to address those impairments; (4) plaintiff took a voluntary leave from work in 2008, in part because of the pain he was experiencing, but he then applied for and received unemployment compensation; (5) his activities of daily living were inconsistent with allegations of disabling impairments; and (6) Dr. Spaccarelli, who treated plaintiff for complaints of back pain, declined to prescribe controlled substances for plaintiff in January 2013 as a result of drug screens that were inconsistent with his prescribed medications. (Tr. 25-26).

Plaintiff's challenge to the ALJ's reliance on his daily activities addresses only one of the six factors the ALJ considered in assessing plaintiff's credibility. Even if the ALJ somehow erred in assessing this factor, the remaining five factors amply support the ALJ's credibility

determination. The ALJ considered the quantity and substance of the medical evidence of record and reasonably found that the objective medical evidence did not fully support plaintiff's allegations of disabling pain. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). As the ALJ noted, with respect to plaintiff's lumbar impairment, on examination plaintiff has exhibited intact sensation, a normal EMG study, full motor strength in the lower extremities, and negative straight leg raises. (Tr. 23-24, 304, 314, 351, 366, 370, 373). Regarding his cervical spine, plaintiff has exhibited diminished sensation in the upper extremities, but only slightly impaired grip strength. (Tr. 24, 366, 370, 373). In addition, plaintiff has exhibited full range of motion in his right shoulder (Tr. 24, 370, 373) and MRI and x-ray studies from 2011 and 2013 showed mostly mild findings in plaintiff's spine and right shoulder. (Tr. 366). The lack of significant objective evidence is a relevant factor in determining the credibility of plaintiff's symptoms. *See Walters,* 127 F.3d at 532 ("The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis."). In addition, the ALJ reasonably noted that plaintiff's various treatment modalities improved his functioning and reduced his pain (Tr. 25, 318, 365, 368, 371), and plaintiff's lack of ongoing psychological counseling or treatment undermined the credibility of plaintiff's allegations about the extent of his limitations from his mental impairments. (Tr. 25). *See Rainey-Stiggers v. Comm'r of Soc. Sec.,* No. 1:13-cv-517, 2015 WL 729670, at *9 (S.D.

14

Ohio Feb. 19, 2015) ("[A] claimant's failure to seek or pursue treatment may be a factor weighing against the claimant's credibility.") (citing *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004)). In addition, the ALJ properly considered the factor that plaintiff received unemployment compensation in assessing his credibility. The Sixth Circuit has held that "[a]pplications for unemployment and disability benefits are inherently inconsistent." *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004). Plaintiff's collection of unemployment benefits required him to attest that he was willing and able to work during the period he alleged he was disabled. *See Reed v. Comm'r of Soc. Sec.*, No. 1:13-cv-268, 2014 WL 1814025, at *7 (S.D. Ohio May 6, 2014) ("Reed argues that the mere receipt of unemployment benefits does not establish that he is not disabled. But it was not the fact that he received benefits that the ALJ cited: it was the fact that in order to receive those benefits, Reed must attest that he is willing and able to work."). This factor further supports the ALJ's credibility finding. Moreover, the refusal of plaintiff's treating physician, Dr. Spaccarelli, to continue to prescribe narcotic medications is a relevant factor undermining plaintiff's allegations of disabling pain. *See Molen v. Comm'r of Soc. Sec.,* No. 3:12-cv-286, 2013 WL 3322300, at *13 (S.D. Ohio July 1, 2013); *see also Byrd v. Comm'r of Soc. Sec.*, No. 5:12cv828, 2013 WL 1150138 at *7 (N.D. Ohio Jan. 14, 2013) (Report and Recommendation) ("Courts have found that a claimant's drug-seeking behavior coupled with refusals by treating physicians to prescribe narcotics is sufficient to undermine the claimant's credibility."), *adopted*, 2013 WL 1154295 (N.D. Ohio Mar. 19, 2013).

Finally, plaintiff contends the ALJ erred in assessing his credibility because there is evidence of record to support his allegations of pain. (Doc. 10 at 11-12). However, even where

substantial evidence would support a different conclusion or where a reviewing court would have decided the matter differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999). Though there is some medical evidence supporting plaintiff's testimony, the ALJ's credibility determination is substantially supported by the reasons he identified.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Walters*, 127 F.3d at 531. The ALJ cited ample reasons for discounting plaintiff's credibility. Because the ALJ's credibility determination is supported by substantial evidence, this Court must defer to it. *See Buxton*, 246 F.3d at 772. Plaintiff's second assignment of error should be overruled.

3. Obesity as a medically determinable impairment

Plaintiff alleges the ALJ and the state agency reviewing consultants never mentioned plaintiff's obesity despite evidence showing he weighed 254 pounds at 5'8" with a BMI of 38.63 on January 11, 2011 (Tr. 350); he weighed 257 pounds with a BMI of 39.09 on December 6, 2010 (Tr. 353); and he weighed 235 pounds in August 2012 and November 2013. (Tr. 369, 407). Plaintiff contends the ALJ failed to characterize plaintiff's obesity as a severe or non-severe impairment; therefore, the ALJ gave no consideration to plaintiff's obesity and the potential impact that it would have on his residual functional capacity. (Doc. 10 at 13). Plaintiff argues that the ALJ should have considered plaintiff's obesity as a medically determinable impairment

and as a severe impairment, which affected his ability to perform work on a sustained basis. (*Id.*).

SSR 02-01p addresses the evaluation of obesity in the disability process. Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002). The Ruling recognizes obesity as "a risk factor" that increases an individual's chances of developing impairments and notes that obesity often complicates chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems. *Id.* at *3. Nevertheless, the Commissioner "will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The Commissioner] will evaluate each case based on the information in the case record." *Id.* at *6.

In this case, plaintiff alleges that neither the ALJ nor the state agency reviewing physicians ever mentioned obesity when considering whether plaintiff was disabled. However, plaintiff himself never listed obesity as an impairment in his disability paperwork (Tr. 217) or at the ALJ hearing (Tr. 38). Moreover, plaintiff has not cited to any evidence from a physician diagnosing obesity as an impairment or opining that obesity imposed additional limitations on him or exacerbated any of his conditions. In *Reynolds*, 424 F. App'x at 416, the Sixth Circuit held that an ALJ's failure to mention obesity in his decision is not reversible error where the claimant never raised the issue of obesity in the disability process:

> While the SSA regulations indicate that "adjudicators must consider any additional and cumulative effects of obesity," 20 C.F.R. pt. 404, subpt P. app. 1, Listings 1.00Q, 3.00I, and 4.00F, Reynolds' argument that the ALJ failed to consider her obesity fails. Reynolds did not put her obesity at issue in the proceedings below: she did not list obesity as one of her impairments, or list it as one of her difficulties on any paperwork put before the various levels of review. More importantly, she did not present evidence from any physician that described

her as obese, much less gave an opinion that her weight imposed additional limitations upon her or exacerbated her other conditions. Therefore, even if Reynolds' silence on the issue of obesity is not deemed to waive consideration of that issue, it does not appear that evidence existed regarding her obesity that the ALJ should have considered.

424 F. App'x at 416. *See also Cranfield v. Comm'r, Soc. Sec.*, 79 F. App'x 852, 857-58 (6th Cir. 2003) (ALJ was under no obligation to address claimant's obesity when neither claimant nor her doctors regarded her weight as an impairment and claimant provided no evidence that obesity affected her ability to work). Therefore, the ALJ's failure to mention or discuss plaintiff's obesity is not error and does not require a reversal or remand of this matter. Plaintiff's third assignment of error should be overruled.

### 4. State Agency Psychologists' Opinion

Janet Souder, Psy.D., reviewed the record in February 2014 and Cynthia Waggoner, Psy.D., reviewed the record upon reconsideration in April 2014. They opined that plaintiff would be limited to maintaining attention, concentration, persistence, and pace for 1-3 step tasks in an environment with no demand for fast pace or long periods of sustained concentration; he could interact on an infrequent, superficial level with the general public with no over the shoulder supervision; and he would do best in a static environment where changes were minor in scope. (Tr. 97-98, 112-13). The ALJ gave "some" weight to the opinions of the state agency reviewing psychological consultants. (Tr. 26).

Plaintiff argues that the ALJ failed to incorporate all of the state agency psychologists' opined limitations into the RFC finding. (Doc. 10 at 15-17). Plaintiff contends that "a limitation to 1-3 step tasks does not properly correspond to the ability to perform detailed *and* complex instructions" as set forth in the RFC. (Doc. 10 at 16) (emphasis added). However, the ALJ's

18

RFC limited plaintiff "to being able to understand, remember, and carry out detailed, *but not complex*, instructions." (Tr. 21). The ALJ's RFC did not include the ability to perform "complex" instructions as plaintiff alleges.

Plaintiff also alleges the ALJ's RFC failed to accommodate the following limitations assessed by the state agency psychologists: the inability to engage in work involving long periods of sustained concentration and the need for a static work environment where changes were minor in scope. (Doc. 10 at 16-17). Plaintiff has not cited any legal authority indicating that the ALJ's RFC is not supported by substantial evidence because he did not include in the RFC assessment the precise limitations opined by the state agency psychologists, whose opinions the ALJ gave "some" weight. While the ALJ did not include the state agency psychologists' limitations verbatim, his RFC finding nevertheless generally accounted for their limitations, when considering the record as a whole:

> The [plaintiff] is limited to being able to understand, remember, and carry out detailed, but not complex, instructions. The [plaintiff] is limited to jobs that do not require a fast-paced production rate. The [plaintiff] is limited to no more than occasional changes in workplace settings and workplace duties with advance notice and demonstrated explanation given of such changes. The [plaintiff] is limited to no more than infrequent and brief interaction with the general public, which is defined as no more than 10% of the workday with each interaction lasting no more than five minutes. The [plaintiff] is limited to no more than occasional interaction with coworkers and supervisors. The [plaintiff] is limited to jobs that do not entail close, over the shoulder type supervision. The [plaintiff] is limited to jobs that allow employees to be off task up to 10% of the workday.

(Tr. 21). An ALJ is not required to adopt a medical source's opinion on limitations verbatim in assessing a claimant's RFC. *See* SSR 96-5p, 1996 WL 374183, at *5 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the RFC assessment.").

"Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). The ALJ is tasked with making an RFC determination, considering the medical opinions and all of the other evidence of record. 20 C.F.R. § 404.1546(c); *Poe,* 342 F. App'x at 157 ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."). Plaintiff has not shown the ALJ erred by not adopting verbatim all of the medical opinions of the state agency psychologists, whose opinions he afforded "some" weight. Plaintiff's fourth assignment of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 1/23/18

Karen L. Litkovitz
United States Magistrate Judge

20

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DANIEL E. BEARD,
    Plaintiff,

Case No. 1:16-cv-1091
Barrett, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).